WILLIAM H. CARY & another *vs.* JOSEPH M. WHITING.

Norfolk. Jan. 26. — Sept. 3, 1875. AMES & ENDICOTT, JJ., absent.

A mortgage of leased premises, given by the lessor to the lessee, provided that the mortgagor should pay the mortgagee all sums then or thereafter due in specified quarterly instalments, and that the instalments as they became due should be paid in rent "to the extent that rent should become due" under the lease. By an indorsement upon the lease, prior to the execution of the mortgage, the lessor agreed that if money which he owed to the lessee should not be paid at the termination of the lease, the lessee should have the right to remain in possession at the same rent until paid in full. By a subsequent indorsement the lease was extended without rent for the further term of six months after the expiration of the term of five years. The rent under the lease was insufficient to pay the instalments under the mortgage. *Held,* on a writ of entry to foreclose the mortgage, that the mortgagee was entitled to the payment of the instalments due as required by the condition of the mortgage, and was not obliged to wait until he should be paid by rent. *Held,*

*also,* upon the issue whether anything was due upon the mortgage, that the lessee was not chargeable with rent for the six months after the term of the lease.

If a lease of mill property provides for an abatement of rent in case the premises or any part thereof is destroyed or damaged by fire during the term of the lease, and a boarding-house on the premises, used by the mill operatives, is destroyed by fire, the abatement to be made is not limited by the rental value of the building destroyed, but includes any depreciation in the rental value of the remainder of the premises, if such depreciation is occasioned by the destruction of the boarding-house.

WRIT OF ENTRY dated December 5, 1872, to foreclose a mortgage of land in Wrentham. Plea, *nul disseisin,* with a specification of defence that the tenant previously to the execution of the mortgage had leased the land to the demandants at a certain rent, and that by the provisions of the mortgage the rent was to be applied to the debt secured by the mortgage, and that said debt had been fully paid by the rent. Trial in the Superior Court, before *Wilkinson,* J., who allowed a bill of exceptions in substance as follows :

On April 4, 1866, the tenant mortgaged the demanded premises, with the buildings thereon, and known as the Eagle Mills, to the demandants. The condition of the mortgage was that the grantor should pay to the grantees the sums of money for which the grantor was then indebted to the grantees, and all sums of money which should become due from the grantor to the grantees, by instalments with interest, two hundred dollars on October 1, 1866, and two hundred dollars at the expiration of each three months thereafter, until said debt should be paid in full. The mortgage also contained this clause : " It being agreed that said grantees shall receive said quarterly payments in rent to the extent that rent shall become due from grantees, from the day of the date hereof, by the terms of a lease given by grantor to grantees of said granted premises bearing date February 7, 1866."

By this lease the tenant in this action leased to the demandants the same property afterwards mortgaged, for the term of five years from the completion of the mill on the premises, the lessees agreeing to furnish the lessor the money to complete it, and to pay twelve hundred dollars a year as rent, reserving to themselves the sum of two hundred dollars of each quarter's rent in liquidation of any debt for money so advanced. The lease contained

the following provision: " In case the premises or any part thereof shall, during said term, be destroyed or damaged by fire, or other unavoidable casualty, so that the same shall be thereby rendered unfit for use and habitation, then and in such case, the rent hereinbefore reserved, or a just and proportionate part thereof, according to the nature and extent of the injury sustained, shall be suspended or abated until the said premises shall have been put in proper condition for use and habitation by said lessor."

On the lease were the three following indorsements :

" Feb. 8, 1866. The lessor further agrees, as an additional part of this contract, that at the expiration of this lease, if the money loaned to him by said Carys for the completion of this mill, or other purposes, shall not be paid by the rents reserved in this lease, or otherwise, said Carys shall retain possession of the property leased until the balance due is fully paid, at the same rate per annum for rent, and that the money to be advanced by said Carys may not exceed four thousand dollars in any event, reserving to myself the privilege of protecting my water rights at Fisher mills, by keeping the waste way constantly open to the bottom ; also to defend any encroachments by other parties of said right. J. M. Whiting."

" April 4, 1866. The lessor within named hereby covenants and agrees with lessees, for the consideration within named, to let them continue to occupy the within property for the further term of six months after the expiration of the term for five years, upon the condition that they shall fulfil the conditions of this lease, and keep the same insured in the sum of six thousand dollars, for the benefit of lessor, without rent. J. M. Whiting, W. H. Cary, W. H. Cary, Jr."

" Oct. 17, 1866. I do this day give the within named lessees full possession of the premises within leased, but no rent to commence until the completion of all the buildings, alterations and additions provided for in this lease. And I do hereby authorize the said lessees to make themselves (if they see fit) any and all the improvements in said premises, which I have herein agreed to make at my expense, and that said Carys may occupy said factory and building for the storage of machinery, and putting up shafting, &c., free of expense. J. M. Whiting."

It was admitted, that the demandants had been in uninter
rupted possession of the leased premises since October 17, 1866
The tenant contended that by the true construction of the mort-
gage, with the lease and the indorsements thereon, the demand-
ants were bound to receive whatever sums might be due to them
under the mortgage, with interest, out of the rents reserved in the
lease, and that, if sufficient rents had not accumulated to cancel
said debt during the five years named in the body of the lease,
they were authorized and required to hold the premises at the
same rental, for such further period as might be necessary to can-
cel the whole mortgage debt; and that, the plaintiff still holding
the premises under the lease, there was and could be no breach of
the condition of the mortgage, even though the amount of rents,
at the end of the five years, did not equal the sum due upon the
mortgage.  The judge declined so to rule, but instructed the jury
that the demandants were entitled to a verdict if the evidence
satisfied them that any sum was due upon the mortgage at the
date of the writ.

On February 25, 1868, the boarding-house used for the mill
operatives upon the leased premises was destroyed by fire, and
was never rebuilt, and the fair rental value of the same was two
hundred dollars per annum.  The tenant contended and asked
the judge to instruct the jury that, under the clause in the lease
which provided for an abatement of the rent in case of fire, the
true measure of abatement was the fair rental value of the build-
ing so destroyed, and that the fact, that the loss of the building
deprived the lessees of the only place within a convenient dis-
tance where their operatives could live, was not an element which
could be considered by the jury for the purposes of allowing a
farther abatement beyond the fair rental value of the building so
destroyed.  The judge declined so to instruct the jury, but did
instruct them that the abatement to be made by them on account
of the fire, was not limited by the rental value of the building
destroyed, but should include any depreciation in the rental value
of the remainder of the premises, if such depreciation was occa-
sioned by the destruction of the boarding-house.

The tenant contended that under the agreement indorsed upon
the lease, dated April 4, 1866, the demandants were not entitled
to the six months' occupation of the premises free of rent, until

the full term of the lease itself was completed; that by a fair construction of the body of the lease, taken in connection with the indorsement of February 8, 1866, the lease was not to expire until the full amount due upon the mortgage was paid out of the rent reserved, or otherwise; and that no deduction of rent could be made by the jury under the agreement of April 4, 1866, in determining whether anything was due upon the mortgage. But the judge instructed the jury that, in ascertaining whether there was any sum due upon the mortgage, they should not charge the plaintiffs with rent for the six months next following the expiration of the five years mentioned in the body of the lease.

The jury found for the demandants; and the tenant alleged exceptions to the rulings, instructions and refusals to rule as requested.

*S. B. Ives, Jr.*, for the tenant.

*W. Colburn*, for the demandants.

COLT, J. The principal question in this case is whether, by a true construction of the condition of the mortgage, as applied to the relations of the parties under the lease previously given by the tenant to the demandants, with the indorsements thereon, there was a breach of that condition before the bringing of this action to foreclose the mortgage.

The condition of the mortgage is that the mortgagor shall pay the mortgagees all sums due at that time, or that might thereafter become due, in instalments of two hundred dollars each quarter with interest. When the mortgage was given, the mortgagees held the land under a lease from the mortgagor; and the condition of the mortgage contains a further provision that the instalments, as they become due on the mortgage, shall be paid in rent "to the extent that rent shall become due" under the lease. This was an agreement that the rent should be applied so far as it might go to the payment of the mortgage debt. No rent became due on the lease until there were several instalments overdue on the mortgage. So that the rent came far short of paying the amount required. The indorsement on the lease, which bears on this question, is an agreement of the lessor that, if his debt to the lessees should not be paid at the end of the lease, they should have the right to remain in possession at the same rent until paid in full.

The mortgage was made some time after both the lease and the indorsement, and it would be a forced construction of these papers to hold that the mortgagees were not entitled to the payment of the instalments required by the condition of the mortgage in money, if the rent was insufficient. The ruling requested on this point would leave the demandants no way of collecting their debt except by the rents ; it would require them to hold for an indefinite period ; and if by fire or other casualty the rent should be reduced so as not to be enough to keep down the interest, to hold until such time as the mortgagor should see fit to pay from other sources. The indorsement referred to is plainly a stipulation giving to the lessees the additional security afforded by the right to hold the premises and apply the rent after the end of the lease to such balance of the plaintiff's debt as should then remain unpaid, by the application of the rents reserved in the lease or " otherwise." It does not preclude other remedies or a resort to other securities. The judge rightly refused to rule as requested on this point. The demandants were entitled to a verdict if there was anything due on the mortgage at the date of the writ. *Slayton* v. *McIntyre*, 11 Gray, 271.

The abatement required by the terms of the lease to be made, in case of a partial destruction of the premises, was properly stated by the judge, and the ruling requested properly refused. The property leased was mill property with all the buildings thereon, and the lease provided for the abatement of a just and proportionate part of the rent in case any part was destroyed by fire. This implies that the loss in the rental value of the whole property is the fair measure of abatement.

The agreement for an extension of the lease without rent was " for the further term of six months after the expiration of the term of five years." It is an extension of the time to five years and six months, and the plaintiffs were entitled to hold the last six months without rent. So the judge ruled.

*Exceptions overruled.*