IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 77150-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| EMERSON BALVINO BOLANOS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | FILED: March 25, 2019 |

HAZELRIGG-HERNANDEZ, J. — Emerson Bolanos was convicted of three counts of misdemeanor violation of a no-contact order, and one count of felony assault in the third degree. Bolanos argues, and the State concedes, that his right to a unanimous jury verdict was violated as to the first count when the State failed to elect a specific act to convict Bolanos and the jury did not receive an instruction requiring the jury to agree as to which act it relied upon to convict. Bolanos further argues that his right to unanimity was also violated as to count five. However, evidence was presented regarding only one act which would have supported that conviction. Thus, no error is demonstrated.

Bolanos finally argues that the trial court erroneously failed to exclude evidence of his prior bad acts. Because Bolanos' proposed redactions would not have prevented the jury from seeing his previous convictions for domestic violence, we find the claimed error to be harmless.

We reverse and remand as to count one for proceedings consistent with this opinion. We otherwise affirm the judgment of the trial court.

## FACTS

Bolanos and M.Y. began dating in 2010 and have a child in common. In 2014, King County Superior Court issued a no-contact order prohibiting Bolanos from contacting M.Y. for two years. In 2015, Seattle Municipal Court issued two orders prohibiting Bolanos from contacting M.Y. and their child, S.B., respectively, for two years. In 2015 and 2016, M.Y. lived with her mother, F.Y., in her Seattle apartment, though M.Y. and S.B. sometimes stayed with M.Y.'s father during that time period.

On two occasions, F.Y. called 911 after meeting Bolanos at or near her apartment. On the December 28, 2015 call, F.Y. stated that M.Y. was not present at the time, and was staying with her father. On the May 1, 2016 call, F.Y. stated that M.Y. was not home at the time.

On June 27, 2016, Bolanos called M.Y. and told her he was going to come over to F.Y.'s apartment. M.Y. called 911. Police officers responded to the apartment. Officer Jayme Beckon stayed in the apartment with M.Y., and two other officers positioned themselves to contact Bolanos if he approached the apartment. Bolanos arrived at the apartment and whistled. M.Y. identified Bolanos to Officer Beckon. Bolanos threw a bottle at the door of the apartment. The bottle hit the door as Officer Beckon opened the door. M.Y. and Officer Beckon received minor injuries that did not require treatment. After Bolanos left the apartment, law enforcement tracked and arrested him.

2

Bolanos was advised of his rights and provided a statement which was admitted at trial. Bolanos stated he was aware of the no-contact orders protecting M.Y. and S.B., he spoke and texted with M.Y. that day, he went to the apartment to see S.B., and he threw the bottle.

At trial, Bolanos moved to redact specific portions of both the municipal and superior court no-contact orders that referenced prior domestic violence convictions. His motion failed to address all such references in the orders, however. The record contains no evidence that Bolanos moved to redact finding of fact five in the superior court order or finding of fact two in the municipal court orders. Those findings of fact are identical, and read as follows:

> Based upon the record both written and oral, the court finds that the defendant has been charged with, arrested for, or convicted of a domestic violence offense, and the court issues this Domestic Violence No-Contact Order under chapter 10.99 RCW to prevent possible recurrence of violence.

The court redacted the portion of the municipal court orders referring to firearms, but otherwise denied the motion. The orders of protection were admitted into evidence.

At the close of trial, the to-convict instruction for count one alleged a violation of a no-contact order protecting M.Y. between December 27, 2015 and June 26, 2016. The to-convict instruction for count five alleged a violation of a no-contact order protecting S.B. on June 27, 2016. A jury acquitted Bolanos of the felony no-contact order violation charged in count seven. It found him guilty of assault in the third degree as charged in count six, and guilty of misdemeanor violation of a no-contact order as charged in counts one, five, and seven.

3

DISCUSSION

I.    Jury unanimity.

Criminal defendants are entitled to a unanimous jury verdict. State v. Armstrong, 188 Wn.2d 333, 340, 394 P.3d 373 (2017) (citing CONST. art. I, § 21; State v. Whitney, 108 Wn.2d 506, 511, 739 P.2d 1150 (1987)). Courts will consider claims of error for the first time on appeal "when 'giving or failure to give an instruction invades a fundamental constitutional right of the accused, such as the right to a jury trial.'" Armstrong, 188 Wn.2d at 339 (quoting State v. Green, 94 Wn.2d 216, 231, 616 P.2d 628 (1980) (plurality opinion)). This court reviews constitutional errors de novo. Armstrong, 188 Wn.2d at 339 (citing State v. Jorgenson, 179 Wn.2d 145, 150, 312 P.3d 960 (2013)). When a trial court error abridges a constitutional right, we will only affirm "if that error was 'harmless beyond a reasonable doubt.'" State v. Kitchen, 110 Wn.2d 403, 409, 756 P.2d 105 (1988) (quoting Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967)).

A Petrich[1] instruction, which instructs the jury that it must unanimously agree that one particular act was proved beyond a reasonable doubt, "should be used 'when the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct.'" State v. Carson, 184 Wn.2d 207, 217, 357 P.3d 1064 (2015). When the State fails to elect one of the distinct criminal acts for conviction, and no Petrich instruction is

---

[1] State v. Petrich, 101 Wn.2d 566, 570, 683 P.2d 173 (1984), abrogated in part on other grounds by Kitchen, 110 Wn.2d at 405–06.

provided, "the possibility that some jurors may have relied on one act or incident and some another" results in a lack of unanimity on all of the elements necessary for conviction and is constitutional error. Kitchen, 110 Wn.2d at 411. The appropriate remedy for a lack of unanimity in the verdict is to reverse the conviction and remand for a new trial. Id. at 412

An exception to the Petrich rule "exists when the acts constitute a continuing course of conduct." State v. Brown, 159 Wn. App. 1, 14, 248 P.3d 518 (2010) (quoting State v. Handran, 113 Wn.2d 11, 17, 775 P.2d 453 (1989)). To determine whether there was such a course of conduct, we evaluate the facts "in a commonsense manner considering (1) the time separating the criminal acts and (2) whether the criminal acts involved the same parties, location, and ultimate purpose." Id. (citing State v. Love, 80 Wn. App. 357, 361, 908 P.2d 395 (1996)).

Here, the to-convict instruction for count one alleged a violation of a no-contact order protecting M.Y. between December 27, 2015 and June 26, 2016. The State introduced evidence that Bolanos visited the residence on at least two separate occasions during that time period, December 28, 2015 and May 1, 2016, the dates of F.Y.'s 911 calls. While the incidents share the same parties (Bolanos and F.Y), location (F.Y.'s apartment or nearby), and ultimate purpose (contacting M.Y. and S.B.), a commonsense analysis reveals the five months between the incidents is too great to consider them part of a continuing course of conduct. Cf. Brown, 159 Wn. App. at 6-7, 14 (finding the continuing conduct exception applies to charging periods of one or two days in length). The State did not elect one of those acts to support a conviction. The jury did not receive a Petrich instruction.

Therefore, the possibility that individual jurors relied on different incidents being proved beyond a reasonable doubt exists in this case.

We cannot find that the error was harmless beyond a reasonable doubt. Bolanos elicited evidence from which a reasonable juror could have a reasonable doubt that M.Y. lived at F.Y.'s apartment in December 2015, and a reasonable juror could have a reasonable doubt that Bolanos was the person F.Y. saw in May 2016. Because the error was not harmless beyond a reasonable doubt, we reverse the conviction on count one and remand for a new trial.

Conversely, count five alleges a violation of a no-contact order protecting S.B. that occurred on June 27, 2016. The State presented evidence of only one act occurring on that date that would have violated the order protecting S.B., approaching within 500 feet of F.Y.'s apartment. Because there is evidence of only one act that could support the conviction, a Petrich instruction was unnecessary for count five.

II.    Prior bad acts.

Bolanos argues that the trial court improperly admitted evidence of his prior convictions in the no-contact orders and failed to apply the redactions he requested, contrary to ER 404(b). "[E]rroneous admission of evidence in violation of ER 404(b) is analyzed under the lesser standard for nonconstitutional error." State v. Gresham, 173 Wn.2d 405, 433, 263 P.3d 207 (2012) (citing State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)). Courts must determine "whether, 'within reasonable probabilities, had the error not occurred, the outcome of the trial would have been materially affected.'" Id. (quoting Smith, 106 Wn.2d at 780).

Bolanos objected to the admission of the no-contact orders without his requested redactions, arguing that admission "runs into the Court's prior ruling about prior bad acts." This argument made it clear that the court should consider ER 404(b) when determining whether or not to admit the evidence, and preserves that issue for appeal. However, Bolanos either failed to request redaction of the findings of fact portion stating that the no-contact orders were the result of a criminal conviction for domestic violence or failed to provide proof of such a request in the record on appeal. Admission of evidence contrary to ER 404(b) is considered a nonconstitutional error, not a manifest constitutional error, and we will not review it for the first time on appeal. RAP 2.5(a). Because the jury would have been informed that Bolanos had been convicted of previous criminal domestic violence charges even if the court had adopted Bolanos' proposed redactions, this alleged error would be harmless.

We review interpretation of evidentiary rules de novo. Id. at 419 (quoting State v. Foxhoven, 161 Wn.2d 168, 174, 163 P.3d 786 (2007)). When the trial court has interpreted the rule correctly, we review the "determination to admit or exclude evidence for an abuse of discretion." Id. (citing Foxhoven, 161 Wn.2d at 174). "'ER 404(b) is a categorical bar to admission of evidence [of a prior bad act] for the purpose of proving a person's character and showing that the person acted in conformity with that character.'" State v. Gunderson, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014) (quoting Gresham, 173 Wn.2d at 420). "To admit evidence of a person's prior misconduct, 'the trial court must (1) find by a preponderance of the evidence that the misconduct occurred, (2) identify the purpose for which the

7

evidence is sought to be introduced, (3) determine whether the evidence is relevant to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect.'" Gresham, 173 Wn.2d at 421 (quoting State v. Vy Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002)).

When a document contains both admissible and inadmissible portions, "only the material and competent parts should be received and read in evidence." Webb v. City of Seattle, 22 Wn.2d 596, 611, 157 P.2d 312 (1945) (discussing irrelevant portions of a document used to impeach a witness). The document may be admitted in evidence if the objectionable portions are deleted from the exhibit or obscured in such a manner as not to be read by the jury. Id.

ER 404(b) is designed to "prevent the State from suggesting that a defendant is guilty because he or she is a criminal-type person who would be likely to commit the crime charged." Foxhoven, 161 Wn.2d at 175 (citing State v. Lough, 125 Wn.2d 847, 859, 889 P.2d 487 (1995)). "[T]he more similar the prior crime to the one presently charged, the greater the prejudice." State v. Saunders, 91 Wn. App. 575, 580, 958 P.2d 364 (1998) (citing State v. Hardy, 133 Wn.2d 701, 711, 946 P.2d 1175 (1997)). The risk of unfair prejudice from prior acts in domestic violence cases is very high. Gunderson, 181 Wn.2d at 925.

Here, it appears that the trial court misinterpreted ER 404(b) when it considered the no-contact order documents as a whole, rather than independently considering each redaction Bolanos requested. The trial court correctly identified that the misconduct likely occurred because the orders were certified copies issued by courts of the state. Protection orders are presumed to be valid. City of Seattle

8

v. May, 151 Wn. App. 694, 698 n.9, 213 P.3d 945 (2009).[2] The court correctly identified that the existence of the no-contact order and the findings that Bolanos and the protected parties were members of a household were highly probative of the elements of the charges, and were submitted to prove those elements. It was reasonable for the court to determine that the probative value of the order and those findings outweighed the prejudicial effect.

Bolanos' proposed redactions regarding his status as a criminal defendant, the postconviction box, and the findings of fact regarding firearms did not apply directly to any element of the charges against him. The only relevance those factors might have had to the charges was the suggestion that Bolanos was a violent, criminal-type person, the exact type of evidence that ER 404(b) bars.

Although this unfairly prejudicial evidence may have influenced the jury's decision as to count one, our disposition of that charge does not require us to examine it closely here. As to counts five, six, and seven, there is a reasonable probability that the error did not affect the outcome of the trial. In regard to counts five and seven, Bolanos admitted that he went to the apartment that night, and he knew there were orders protecting M.Y. and S.B. As to count six, Bolanos admitted that he threw the bottle at the door. We find the asserted error harmless as to counts five, six, and seven.

---

[2] See also Levinson v. Vanderveer, 169 Wash. 254, 256, 13 P.2d 448 (1932) (judgments are presumed to be valid).

We reverse the verdict as to count one and remand for further proceedings.

We affirm the judgment as to counts five, six, and seven.

WE CONCUR: